UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| BYFORD PETER WHITTINGHAM,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>NEVADA ATTORNEY GENERAL'S OFFICE, *et. al.*,<br><br>　　　　　Defendants. | Case No.: 2:20-cv-00811-GMN-EJY<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

Pending before the Court is the Motion for Summary Judgment, (ECF No. 81), filed by Defendants Nevada Attorney General's Office ("AGO"), AGO Investigator David O'Hara, and the State of Nevada, ex. rel. Plaintiff Byford Whittingham filed a Response, (ECF No. 90), to which Defendants filed a Reply, (ECF No. 93).

For the reasons discussed below, the Court GRANTS Defendants' Motion for Summary Judgment.

I.　　　**BACKGROUND**

This case arises from the AGO's withdrawal of its conditional employment offer to Plaintiff, which Plaintiff alleges was due to the AGO learning the details of his lawsuit against his former employer, the Los Angeles Police Department, ("LAPD"). (*See generally* First Am. Compl. ("FAC"), ECF No. 49). Plaintiff has a long career in law enforcement, beginning with the Jamaica Police Department in 1974 and ending most recently as a Captain in the LAPD. (Whittingham Aff. ¶¶ 3–16, Ex. 1 to Resp., ECF No. 90-1). After his retirement from the LAPD, Plaintiff met with the AGO's Chief of Investigations, Chief Swanson, to discuss potential employment opportunities. (*Id.* ¶ 24); (Swanson Dep. 13:21–15:9, Ex. C to Mot. Summ. J.). Chief Swanson advised him that there were currently no open positions, but that he

would notify Plaintiff when one became available. (Swanson Dep. 14:3–11, Ex. C to Mot. Summ. J.).  Plaintiff told Chief Swanson that he had a pending legal matter with the LAPD and recalled Chief Swanson stating that the lawsuit was "not a big deal." (Whittingham Decl. 77:2–21, Ex. G to Mot. Summ. J.).  Chief Swanson did not remember if Plaintiff mentioned the LAPD lawsuit but testified that even if he had, it would not have made a difference because it was Plaintiff's right to bring a lawsuit. (Swanson Dep. 15:14–19, Ex. C to Mot. Summ. J.).  When a vacancy for a Criminal Investigator position appeared, Chief Swanson emailed the job posting to Plaintiff, who submitted an application. (Swanson Opening Email, Ex. H to Mot. Summ. J., ECF No. 81-8); (App. for Employment, Ex. I to Mot. Summ. J., ECF No. 81-9).

      Plaintiff was given an interview with Chief Swanson, Deputy Chief Davies, and two Supervising Investigators. (Harris Email, Ex. L to Mot. Summ. J., ECF No. 81-12).  The parties dispute whether Deputy Chief Bowen was also on the panel. (Whittingham Aff. ¶¶ 29–30, Ex. 1 to Resp.); (Bowen Dep. 28:20–24, Ex. B to Mot. Summ. J., ECF No. 81-2).  During the interview, Plaintiff referenced the LAPD lawsuit but did not discuss the details. (Whittingham Dep. 81:5–21, Ex. G to Mot. Summ. J.).  A few days after the interview, Chief Swanson received approval to extend a conditional offer of employment to Plaintiff and begin the background investigation process. (Email Thread to Swanson, Ex. N to Mot. Summ. J., ECF No. 81-14).  Defendant Investigator O'Hara called Plaintiff on February 15, 2019, to relay a conditional offer pending the outcome of a background investigation. (Conditional Offer Email Chain, Ex. O to Mot. Summ. J., ECF No. 81-16); (Whittingham Aff. ¶ 31, Ex. 1 to Resp.).[1]

      Shortly after the phone call, Plaintiff received a Background Investigation packet to be completed. (O'Hara Packet Email, Ex. R to Mot. Summ. J., ECF No. ECF No. 81-18);

---

[1] On April 8, 2019, a written conditional offer letter of employment was mailed to Plaintiff, signed by Deputy Chief Bowen. (Cond. Offer Letter, Ex. Q to Mot. Summ. J., ECF No. 81-17).  The letter stated that it was "not a final offer," and that his appointment was contingent on the completion of "evidence and confirmation of an accurate application," and a background investigation pursuant to Nevada Administrative Code ("NAC) 289.110. (*Id.*).  The reason for the delay between the phone call and letter is unclear.

(Whittingham Aff. ¶¶ 33–34, Ex. 1 to Resp.). The packet included a Personal History Statement ("PHS") and a Pre-Investigative Questionnaire ("PIQ"), both of which contain personal and professional questions about an applicant's history. (*Id.*). Applicants are also fingerprinted and ran through the National Criminal Information Center ("NCIC"), Nevada Criminal Justice Information System ("NCJIS"), DMV, Transunion TLO and N-Dex. (O'Hara Dep. 29:15–30:6, Ex. D to Mot. Summ. J.). Plaintiff sent the completed PHS and PIQ forms to Investigator O'Hara on February 26, 2019. (Forms Email Thread, Ex. T to Mot. Summ. J., ECF No. 81-2).

The forms contain multiple warnings about the importance of being filled out correctly and thoroughly. In fact, the PHS instructions specifically admonish applicants that "deliberate misstatements or omissions on this form *will* result in your application being rejected, regardless of the nature or reason for the misstatements/omissions." (PHS, Ex. X to Mot. Summ. J., ECF No. 81-24). Applicants are instructed to include infractions or misdemeanors that may have been committed at any time while employed at a law enforcement agency. (*Id.*). The PIQ form states that an untruthful response will be grounds for disqualification or non-selection and warns that "any *omission, falsification, misstatement, untruthful response, or discrepancy* can be cause for disqualification from the background hiring process. (PIQ, Ex. Y to Mot. Summ. J., ECF No. 81-25) (emphasis in original).

At issue in this case are Plaintiff's responses to particular questions on these forms. PHS question 65 asked, "Have you ever been a party in a civil lawsuit (e.g., small claims actions, dissolutions, child custody, paternity, support, etc.)?" Plaintiff checked "yes" and noted child custody matters. (*Id.*). Question 66 asked whether the police had ever been called to Plaintiff's home, to which he checked "no." (*Id.*). Question 67 asked "Have you or your spouse/partner ever been referred to Child Protective Services?" and Plaintiff checked "yes." (*Id.*). He reported one instance not relevant to this suit. (*Id.*). And question 72 asked whether

Plaintiff had "Any other act amounting to a misdemeanor within the past 7 years?" and Plaintiff checked "no." (*Id.*). On the PIQ form, Plaintiff responded "no" to question 116, which asked if he had ever violated a child custody order. (*Id.*). He certified that he was "aware that any false statements or omissions" made on the questionnaire would be cause for his non-selection or disqualification. (*Id.*). Plaintiff signed and certified that all statements were true and complete to the best of his knowledge and belief. (*Id.*).

On April 3, 2019, Investigator O'Hara conducted a telephonic interview with Plaintiff to review his answers. (Whittingham Aff. ¶ 40, Ex. 1 to Resp.); (O'Hara Dep. 20:22–22:6, Ex. D to Mot. Summ. J.). When he reached the question about civil lawsuits, to which Plaintiff disclosed only his child custody matters, Investigator O'Hara informed Plaintiff that he should also disclose any lawsuits that he brought as the plaintiff. (Whittingham Aff. ¶ 44). Plaintiff told Investigator O'Hara that he would include his lawsuit against the LAPD, and that it involved discrimination and retaliation. (O'Hara Dep. 21:3–22:6, Ex. D to Mot. Summ. J.); (Whittingham Aff. ¶ 45, Ex. 1 to Resp.). The Investigator responded that the LAPD lawsuit "should not have anything to do with the AG's office, 'but it would be good to see it and have it for my records.'" (Whittingham Aff. ¶ 45, Ex. 1 to Resp.).[2]

After the call, Plaintiff emailed a copy of the complaint in his LAPD lawsuit to Investigator O'Hara. (LAPD Email, Ex. W to Mot. Summ. J., ECF No. 81-23); (LAPD Lawsuit, Ex. 1 to Resp., ECF No. 90-1). O'Hara read the complaint and testified that he did not feel like it was pertinent to the hiring process. (O'Hara Dep. 24:8–25:3, Ex. D to Mot. Summ. J.). He also stated that he "wasn't too concerned about it" because "we had no dog in this fight." (*Id.*). He advised Chief Deputy of the lawsuit regardless, because he had an

---

[2] Plaintiff also asked Investigator O'Hara if he had seen his TEAMS Report, which lists every complaint or issue brought to the LAPD's attention during Plaintiff's career. (*Id.*). According to Plaintiff, the Investigator acknowledged that he had. (*Id.* ¶¶ 45, 95). However, Investigator O'Hara testified that he never saw the Teams Report. (O'Hara Dep. 20:15–21, Ex. D to Mot. Summ. J.).

obligation to disclose the information to his superiors. (*Id.* 24:15–29:5).  O'Hara and the Chief Deputy also called Chief Swanson, who told them to continue with Plaintiff's background check. (*Id.* 31:19–33:25).  Chief Swanson testified that he didn't see the email or lawsuit complaint, but that he only knew generally that Plaintiff had a lawsuit against the LAPD. (Swanson Dep. 42:2–32:7, Ex. C to Mot. Summ. J.).  He believed that the contents of the lawsuit were "not relevant to the hiring process in any form or fashion." (*Id.* 43:3–7).

A week later, Investigator O'Hara ran Plaintiff's name though the N-Dex and received a result for police contact at Plaintiff's former residence in West Covina, California. (O'Hara Dep. 35:6–17, Ex. D to Mot. Summ. J.).  He requested records from the West Covina Police Department, ("WCPD"), who faxed him a crime report from 1996. (1996 Crime Report, Ex. BB to Mot. Summ. J., ECF No. 81-28).  The report was for a Violation of a Court Order, a misdemeanor crime in California. (*Id.*).  Plaintiff's ex-wife alleged that Plaintiff violated their child custody order when he left their child with a babysitter. (*Id.*).  Plaintiff was not home during the initial morning contact. (*Id.*)  Later in the afternoon, the officer called Plaintiff's ex-wife to let her know that Plaintiff was back home and demanding that the child be returned for the rest of the weekend. (*Id.*).  In his deposition, Plaintiff testified that the police did not talk to him about the incident, but that he became aware that the police responded to his home, later that day. (Whittingham Dep. 127:6–20, Ex. G to Mot. Summ. J.).

After reading the report, Investigator O'Hara concluded that he had found discrepancies between the crime report and Plaintiff's PHS and PIQ answers because the incident related to whether the police had been to his home, whether he had violated a child custody order, and any misdemeanors since working in law enforcement. (O'Hara Dep. 44:9–47:5, Ex. D to Mot. Summ. J.).  He advised Chief Deputy Bowen and Chief Swanson about the crime report, and Chief Swanson stated that he also had concerns because Plaintiff hadn't disclosed this incident.

(*Id.*). Chief Swanson instructed the Investigator to terminate the investigation and submit a disqualification memo. (*Id.*).

Investigator O'Hara's memo to Chief Swanson explained that Plaintiff never disclosed the 1996 incident, even though he represented that the information provided on the forms was correct and accurate. (Disqualification Memo, Ex. Z to Mot. Summ. J., ECF No. 81-26). He wrote that because Plaintiff failed to disclose that he was a named suspect for violating a court order while employed at the LAPD, he lacked the integrity required to be employed by the AGO. (*Id.*). The next day, Chief Swanson shared the memo with the Second Assistant Attorney General. (Memo Email, Ex. CC to Mot. Summ. J., ECF No. 81-29). On April 23, 2019, the AGO sent Plaintiff a letter notifying him of the withdrawal of his conditional employment offer. (Withdrawal Letter, Ex. DD to Mot. Summ. J., ECF No. 81-30).

When Plaintiff received the letter withdrawing his conditional offer, he sent an email to Chief Swanson about an informal appeal of the decision. (Letter to Swanson, Ex. GG to Mot. Summ. J., ECF No. 81-33). Plaintiff believed that the decision to terminate the background investigation was due to the LAPD lawsuit. (Whittingham Aff. ¶ 102, Ex. 1 to Resp.). Chief Swanson informed him that the decision was based on failures to disclose contact with law enforcement, and that the pending lawsuit was not a factor in the decision to disqualify him. (Swanson Email Notes, Ex. II to Mot. Summ. J., ECF No. 81-34); (Whittingham Aff. ¶ 104, Ex. 1 to Resp.). Plaintiff asked Chief Swanson to take a closer look at the police reports, which the Chief agreed to do. (Whittingham Aff. ¶¶ 107–09, Ex. 1 to Resp.). But the Chief ultimately relayed to Plaintiff that he did not find anything to change his mind. (*Id.* ¶ 112).

Plaintiff filed this action in May 2020, and Defendants moved to dismiss his claims, (ECF No. 54). The Court granted Defendants' Motion to Dismiss as to all claims except Plaintiff's retaliation claim brought under Title VII. (Order Granting in Part Mot. Dismiss, ECF

No. 64).  Defendants then filed the instant Motion for Summary Judgment on Plaintiff's remaining claim.

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.*  "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)).  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quotation marks and citation omitted).  In contrast, when the nonmoving party bears the burden of proving the claim

or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied, and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts," *Orr v. Bank of Am.*, 285 F.3d 764, 783 (9th Cir. 2002).  "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252.  In other words, the nonmoving party cannot avoid summary judgment by "relying solely on conclusory allegations unsupported by factual data." *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III.  DISCUSSION

Plaintiff's retaliation claim is based on the allegation that the AGO withdrew his conditional offer of employment after learning about the details of his lawsuit against the LAPD. (FAC ¶¶ 213–222). "[I]n the failure-to-hire context involving a claim of retaliation, the plaintiff meets her prima facie burden by showing that 1) she engaged in protected activities, 2) the position was eliminated as to her, and 3) the position was eliminated as to her because of the protected activities." *Ruggles v. California Polytechnic State Univ.*, 797 F.2d 782, 786 (9th Cir. 1986). If the plaintiff establishes a prima facie case, "the burden of production shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the 'adverse employment decision.'" *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If the defendant offers a legitimate, non-retaliatory reason, the burden returns to the plaintiff to show the proffered reason is a pretext for retaliation. *See id.*

#### A. Plaintiff's Prima Facie Case

Defendants argue that Plaintiff cannot establish a prima face case of retaliation because he lacks evidence that the LAPD lawsuit was the cause of his employment offer withdrawal. (Mot. Summ. J. 20:24–26). "That an employer's actions were caused by an employee's engagement in protected activities may be inferred from 'proximity in time between the protected action and the allegedly retaliatory employment decision.'" *Ray v. Henderson,* 217 F.3d 1234, 1244 (9th Cir. 2000) (quoting *Yartzoff v. Thomas,* 809 F.2d 1371, 1371 (9th Cir. 1987)). The proximity in time must be "very close." *Clark Cnty. Sch. Dist. v. Breeden*, 532

U.S. 268, 273 (2001). "In addition, the plaintiff must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity." *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir. 2003). "Under the *McDonnell Douglas* framework, '[t]he requisite degree of proof necessary to establish a prima facie case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence.'" *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994)

Plaintiff has met his prima facie burden. First, he engaged in a protected activity by filing a race-based discrimination lawsuit. *See* 42 U.S.C. §2000e-3(a). Second, the position was eliminated as to him when the AGO revoked Plaintiff's conditional employment offer. And third, Plaintiff can demonstrate temporal proximity to infer causation at this initial stage. Plaintiff sent the lawsuit complaint to Investigator O'Hara on April 3, 2019, and Investigator O'Hara advised Deputy Chief Bowen and Chief Swanson about the lawsuit. (LAPD Email, Ex. W to Mot. Summ. J.); (O'Hara Dep. 31:19–33:25, Ex. D to Mot. Summ. J.). The following week, Investigator O'Hara ran Plaintiff's name though N-Dex, which brought up the 1996 crime report. (*Id.* 25:6–17). Then, less than a month later, the AGO sent Plaintiff a letter to notify him that his employment offer was withdrawn. (Withdrawal Letter, Ex. DD to Mot. Summ. J.). Plaintiff argues that the fact that Investigator O'Hara did not run his name though the N-Dex until *after* he read the LAPD complaint indicates that he was searching for a pretextual basis upon which to withdraw Plaintiff's offer. (Resp. 20:4–25). Thus, due to the temporal proximity and Plaintiff's minimal burden, the burden now shifts to Defendant to demonstrate a legitimate and non-retaliatory reason for the employment offer withdrawal.

**B. Defendant's Burden to Present a Legitimate, Non-Retaliatory Reason**

Defendants burden is "one of production, not persuasion, thereby involving no credibility assessment." *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1147 (9th Cir. 2006).

In their Motion for Summary Judgment, Defendants articulate that the "failure of a law enforcement applicant to exhibit candor and credibility in his background is a legitimate and nondiscriminatory reason to withdraw an employment offer." (Mot. Summ. J. 22:24–25). Defendants meet their production burden of presenting evidence to support their argument that Plaintiff's offer was withdrawn due to the omission of information in his PHS and PIQ forms.

Plaintiff's PHS and PIQ forms lacked information about the incident in 1996 when police were called to Plaintiff's home because his ex-wife reported a violation of their child custody court order.  This information would have been relevant to the form questions asking whether the police had ever been called to Plaintiff's home, whether he had violated a child custody order, and whether he had been involved with a misdemeanor since becoming employed with a law enforcement agency. (*See* O'Hara Dep. 44:9–47:5, Ex. D to Mot. Summ. J.).  Plaintiff represented that the information on his application was complete, and the forms cautioned that "*deliberate* misstatements or omissions" *would* be grounds for disqualification, and that any "omission, falsification, misstatement, untruthful response, or discrepancy" *may* be grounds for disqualification. (PIQ, Ex. Y to Mot. Summ. J., ECF No. 81-25); (PHS, Ex. X to Mot. Summ. J., ECF No. 81-24).  Chief Swanson reported this omission up the chain of command and explained that the "failure to disclose his violation of a court order, regardless of whether or not he was prosecuted, is a disqualifier for him being a criminal investigator with the AGO." (Memo Email, Ex. CC to Mot. Summ. J., ECF No. 81-29).  He further noted that he was concerned that the 1996 report was never shared with the LAPD while Plaintiff was an employee, and that hiring Plaintiff could open the AGO up to *Brady* issues. (*Id.*).

Peace officer applicants must undergo a background investigation to verify that they have "good moral character" and integrity. (POST Background Guide, Ex. MM to Mot. Summ. J., ECF No. 81-30); NAC 289.110(1).  Indicators of dishonesty can include misstating or failing to completely answer questions, as well as inaccuracies or deliberate omissions in applications.

(*Id.* at 8). Investigator O'Hara testified that Plaintiff's failure to disclose the police contact was an integrity issue, and that it is not uncommon for an applicant to be disqualified to failure to disclose information in their background package. (O'Hara Dep. 38:4–40:16, 49:9–50:5, Ex. D to Mot. Summ. J.). He noted that whether or not Plaintiff was actually guilty of violating the child custody was not the concern, but rather the fact that he chose not to mention the incident at all, including that he was listed as a suspect in a crime. (*Id.* 41:5–45:19). Chief Swanson testified that the "sole basis for the withdraw of the conditional employment offer" was the failure to answer the PHS and PIQ questions truthfully. (Swanson Dep. 43:23–44:5, Ex. C to Mot. Summ. J.). Defendants have thus met their production burden, which Plaintiff does not refute in his Response brief. (*See* Resp. 22:1–2).

### C. Plaintiff's Burden to Prove the Proffered Reason is Pretextual

A plaintiff can establish pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981). "Although the inference of discrimination created from the prima facie case is gone, the evidence used in its establishment may be considered for examining pretext." *Lindsey*, 447 F.3d at 1148. If Plaintiff lacks evidence to refute the defendant's legitimate explanation, "summary judgment is appropriate, even though [the] plaintiff may have established a minimal prima facie case based on a *McDonnell Douglas* type presumption." *Wallis*, 26 F.3d at 890–91.

Plaintiff relies on two primary arguments. First, he points out that that Investigator O'Hara ran the N-Dex search *after* Plaintiff sent him a copy of the complaint in his LAPD lawsuit, indicating that the Investigator was searching for a pretextual reason to withdraw the employment offer. (Resp. 22:27–28:4). He contends that the Investigator should have run the N-Dex search on February 26, 2019, when he ran the criminal history checks with the FBI,

NJIS, and NCIC. (*Id.*).  Second, he argues that any omission was not deliberate. (*Id.* 23:5–24:12).  He explains that he knew the importance of being honest, and that the AGO's could have called him for clarification but didn't. (*Id.* 24:19–25:2).

Beginning with Plaintiff's first argument about the timing of the N-Dex search, his speculation as to the Investigator's motivation fails to create a genuine issue of material fact. Investigator O'Hara testified that he runs the same background checks on all applicants, and it can take up to two months to complete the process. (O'Hara Dep. 30:4, 52:25–53:20, Ex. D to Mot. Summ. J.).  Plaintiff presents no evidence that all background checks are typically ran on the same day, or that his case was treated differently than other applicants.  The timing of the search, without more, is not enough to demonstrate a pretextual motive.  It is equally likely that when Investigator O'Hara realized that Plaintiff left the LAPD lawsuit off his PHS and PIQ forms, he was reminded to run the report and verify whether anything else was omitted.

Defendants also knew about Plaintiff's lawsuit against LAPD since his initial conversation with Chief Swanson, before he even applied to work at the AGO. (Whittingham Aff. ¶¶ 24–25, Ex. 1 to Resp.).  Chief Swanson testified that bringing the lawsuit against LAPD was Plaintiff's right, and that it didn't make any difference to him. (Swanson Dep. 15:4–19, Ex. C to Mot. Summ. J.).  In fact, he encouraged Plaintiff to apply to the AGO despite knowing about Plaintiff's pending lawsuit. And Plaintiff again mentioned his pending lawsuit during his panel interview, but the Chief still extended a conditional offer of employment. (Whittingham Dep. 81:5–21, Ex. G to Mot. Summ. J.).  Defendants were therefore generally aware of the lawsuit, even if they didn't know the details, and Plaintiff doesn't explain the lawsuit's complaint itself would suddenly cause Defendants to withdraw the offer.  When Investigator O'Hara shared the LAPD lawsuit with Chief Swanson, the Chief instructed him to continue with the background check.  It wasn't until Defendants discovered the 1996 crime report that Chief Swanson instructed the Investigator to stop the background investigation.  Other than the

timing of the N-Dex search, Plaintiff presents no evidence that Defendants were concerned about his LAPD lawsuit, while Defendants present emails, letters, and depositions stating the opposite. Because Plaintiff's evidence of the timing is "merely colorable," he does not demonstrate a genuine dispute of material fact as to whether Defendants' reasoning was pretextual. *See Anderson*, 477 U.S. at 249–50.

Plaintiff's next argument, that his omission was not deliberate, is not a material issue to this case. The Court acknowledges that there is a genuine dispute as to whether Plaintiff deliberately left the 1996 incident out of his PIQ and PHS answers, or whether he simply forgot about the incident. But either way, Defendants had a legitimate reason to withdraw the employment offer.

The PIQ form, on which Plaintiff stated he has never violated a child custody order, does not require that any omission or discrepancy be deliberate. The first page of the PIQ states that an "untruthful response" will be grounds for disqualification. (PIQ at OAG 0319, Ex. Y to Mot. Summ. J.). It further warns that applicants "are admonished that any omission, falsification, misstatement, untruthful response, or discrepancy can be cause for disqualification from the background hiring process." (*Id.*). Plaintiff checked the box that he understood the admonishment. (*Id.*). Question 116 of the PIW asks, "Have you ever violated a child custody court order?" and Plaintiff checked "No." (*Id.* at OAG 0325). This is a discrepancy from the 1996 crime report. (1996 Crime Report at OAG 0359, Ex. BB to Mot. Summ. J.).

The officer who authored the report arrived at Plaintiff's home around 8:30AM, but Plaintiff and his children were not home. (*Id.*). The officer spoke to Plaintiff's ex-wife outside, and she explained that she and Plaintiff have joint custody of their 4-year-old son. (*Id.*). She showed the court order in case #BD112143 which states that "each party shall notify the other parent and give that parent first right of refusal, care for the child, in the event that the parent, with whom the child is with, must leave said minor child with a babysitter for one hour or

more." (*Id.* at OAG 0361). Plaintiff left home around 7:00 AM, leaving the minor child with his fiancé to babysit. (*Id.*). The fiancé left the home with his three children, including the 4-year-old son, around 7:50 AM and returned an hour later. (*Id.*). Plaintiff's ex-wife then took custody of the minor child until Plaintiff returned home later that day. (*Id.*).

As to the PHS form, Plaintiff is correct that it states that "*deliberate misstatements or omissions* on this form *will* result in your application being rejected." (PHS at OAG 0220, Ex. X to Mot. Summ. J.). But this admonishment implies that even though deliberate misstatements lead to automatic rejections, a deliberate misstatement is not the *only* way for an applicant to be rejected. For example, the form also states that inconsistencies between the document and the polygraph will also lead to disqualification. (*Id.* at OAG 0221). And the "number one reason individuals fail background investigations is because they attempt to withhold job-relevant information from their prospective employers." (*Id.* OAG at 0222). So just because this form warns about the "number one reason" for disqualification, it doesn't exclude other possible reasons, like omitting, whether deliberate or not, pertinent information related to the question. The form also clarifies that it is the applicant's responsibility to ensure that the information is complete and correct, and that acts should be disclosed even if the applicant was never prosecuted. (*Id.* at OAG 0221). Considering the language on the PHS form, the Court finds that the AGO's consideration of the PHS form omissions is reasonable, regardless of whether the omissions were deliberate.

Not only did the Investigator find an omission or discrepancy in both forms, but Chief Swanson noted his concern to the Second Assistant Attorney General that the 1996 incident was not disclosed to the LAPD, Plaintiff's employer at the time. (Memo Email, Ex. CC to Mot. Summ. J.). He was further worried about potential *Brady* issues if Plaintiff were to be hired and later impeached based on his reliability. (*Id.*). Considering all evidence from both parties, the Court finds that Plaintiff does not provide sufficient evidence to create a dispute of material

fact that would preclude summary judgment. Plaintiff fails to provide evidence upon which the Court could find that it is more likely his offer was withdrawn because of his LAPD lawsuit, or that the AGO's reason is unworthy of credence. The Court therefore GRANTS summary judgment for Defendants.

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 81), is **GRANTED.**

The Court kindly directs the Clerk of Court to close the case and enter judgment for Defendants.

**DATED** this __29__ day of September, 2024.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT